## In Re Mollie ORSHANSKY.

Nos. 04–PR–1317, 05–PR–209.

District of Columbia Court of Appeals.

Argued May 25, 2006.
Decided July 10, 2008.

George A. Teitelbaum, Washington, for appellant, Jane Pollack.

Harry J. Jordan, pro se, appellee.

Before RUIZ and REID, Associate Judges, and PRYOR, Senior Judge.

RUIZ, Associate Judge:

The matter of Ms. Mollie Orshansky's conservatorship first came before this court in 2002, when we ruled that the probate court had erred in appointing a guardian and conservator, the appellee, Harry J. Jordan, from the court's fiduciary list, without following the safeguards of the District of Columbia Guardianship, Protective Proceedings, and Durable Power of Attorney Act of 1986, D.C.Code § 21–2081 *et seq. In re Orshansky,* 804 A.2d 1077, 1080 (D.C.2002) (hereinafter referred to as *"Orshansky I "*).

Appellant, Jane Pollack, is Ms. Orshansky's niece and the appellant in the original proceeding. She has presented a seventeen-point appeal of the rulings that have taken place since we remanded the

case in *Orshansky I*. These seventeen points can be grouped into three questions: 1) whether the probate court acted properly in reappointing Mr. Jordan as special conservator to gradually wind down the government's involvement in Ms. Orshansky's estate; 2) whether Mr. Jordan is due compensation for the service he rendered at the request of the court; and 3) if so, whether the probate court's assessment of the amount owed Mr. Jordan is reasonable. We hold that we are without jurisdiction to consider the first question, concerning Mr. Jordan's appointment as special conservator. We answer the second question in the affirmative, as a matter of law; and we conclude that the probate court acted within its discretion in determining the amount to be awarded as fees and costs. Therefore, we affirm.[1]

## I.

### Facts and Procedural History

The proceedings leading up to this court's first ruling remanding the case are detailed in *Orshansky I*. We briefly summarize them here, and describe the proceedings following remand. In early November 2001, the District of Columbia's Adult Protection Services (APS) paid several visits to Ms. Orshansky, who was 87 years old at the time and living alone in the District, and found her "malnourished, frail, and in 'a self-neglecting state.'" 804 A.2d at 1080. On December 19, 2001, finding her "lying helpless on the floor of her apartment .... malnourished, dehydrated and filthy," *id.*, APS took Ms. Orshansky to George Washington University Hospital for emergency care. The hospital filed a petition with the probate court for an intervention proceeding, to have a permanent guardian and conservator appoint-

ed for her, based on a medical report which diagnosed Ms. Orshansky as "suffering from a progressive global dementia," and "unable to take care of herself" or her affairs. *Id.* at 1081. The court appointed Mr. Jordan, an attorney on the court's fiduciary list, to represent Ms. Orshansky, and scheduled a hearing for February 12, 2002. *Id.* In the interim, however, appellant presented a health care proxy, duly executed under New York law well before Ms. Orshansky's hospitalization, which granted to appellant the power to make health decisions on her aunt's behalf. *Id.* at 1081 & n. 2. Appellant repeatedly complained that the hospital was not providing adequate care, but, despite the proxy, the Hospital refused to discharge Ms. Orshansky into appellant's care. On January 21, appellant removed her aunt, without informing the hospital until the two were in Ms. Orshansky's New York City apartment. *Id.* at 1081.

Upon the Hospital's request, the probate court, Judge Kaye K. Christian presiding, held an emergency hearing on January 25, 2002, at which Mr. Jordan was appointed temporary guardian and conservator, and Ms. Tanja Castro replaced him as appointed counsel for Ms. Orshansky. *Id.* at 1082–83. The full hearing was held on February 12, as scheduled. *Id.* at 1083. Appellant's lawyer attended the hearing, as well as representatives from the Hospital and APS, but neither Ms. Orshansky nor her sister Rose, who is co-trustee of Ms. Orshansky's trust, were present, and the court-appointed attorney, Ms. Castro, had failed to contact or consult with her client about the pending petition. *Id.* at 1082–84, 1088–89 & n. 10. We concluded that this lack of notice and consultation violated Ms. Orshansky's statutory right to appeal. As the issues raised by appellant survive her aunt's death, we consider her arguments and decide the appeal.

---

**1.** It has come to the court's attention from press accounts that Ms. Orshansky, a noted economist, died during the pendency of this

adequate representation, *id.* at 1095 (citing D.C.Code § 21–2033(b)), and that her absence should not have been excused without "good cause." *Id.* at 1096 (citing D.C.Code § 21–2041(h)). We also concluded that the trial court abused its discretion by voiding the health care proxy without good cause, and ignoring Ms. Orshansky's wishes—as expressed in her designation of appellant on the health care proxy—in determining who should represent her interests. *Id.* at 1097–98 (citing D.C.Code §§ 21–2202(3), –2043(b)). Concluding that the "elevated benchmark of informed and careful decision making," required by the Guardianship Act had not been satisfied, *id.* at 1098, "we reverse[d] the decision and orders of the probate court, and vacate[d] the appointments of Harry Jordan as guardian and conservator of Mollie Orshansky." *Id.* at 1104. Noting that the state of New York was engaged in similar proceedings, however, we remanded the case "to the extent that the probate court determines that further proceedings are advisable for the protection of Ms. Orshansky." *Id.*

On June 18, 2002, after the first appeal was filed but before this court heard oral argument, Judge Christian granted the first of Mr. Jordan's petitions for compensation. The judge authorized payment from the estate of $6,240 ($7,800 had been requested) as full compensation for Mr. Jordan's services as counsel, prior to the probate court's appointment of him as general conservator and guardian. This payment has since been made. On October 10, 2002, Judge Christian recused herself for reasons not relevant to this appeal, and

the case was reassigned to Judge Peter H. Wolf.

Judge Wolf's first order, docketed December 9, 2002, stated that the court would address "any issues arising out of the reversal and remand" in *Orshansky I*, noted those pending issues on which it planned to hear further argument,[2] and requested that the parties submit in writing other issues for his consideration. After conducting a three-hour hearing, on March 28, 2003, the probate court issued an order dismissing the intervention proceeding. The probate court recognized that Mr. Jordan could no longer serve as general guardian or conservator, but given "the practicalities of administration" and the need "to avoid the spectacle of asking the New York court to try to pick up and reassemble the chips that have fallen as they may," it sought to avoid creating a "gap" of authority for the actions that had been already taken by Mr. Jordan before this court vacated his appointment as general guardian and conservator. It ruled, therefore, that Mr. Jordan's appointment as general conservator and guardian was void as of August 15, 2002 (the date of our opinion in *Orshansky I* reversing the appointment and remanding the case) but— over appellant's vigorous objection—appointed Mr. Jordan to serve as *special* conservator. That appointment was made retroactive to the same day the prior appointment was vacated, and was for the limited purposes of winding down the government's involvement, coordinating with any orders from the New York court, and providing a final accounting to the Superior Court.[3] The parties agreed that the

---

**2.** Judge Wolf identified two petitions Mr. Jordan had file requesting guardian and conservator fees, covering the periods January 28 to July 19, 2002, and July 21 to October 7, 2002, as well as his First and Final Accounting. Appellant objected to the fee petitions and accounting.

**3.** The court order provides that:

> HARRY J. JORDAN, Esq. is appointed SPECIAL CONSERVATOR of the subject *nunc pro tunc* to August 15, 2002 for the limited purposes of conserving any assets of the subject currently under his control as tem-

probate court retained "ancillary jurisdiction" to decide the pending fee and expense requests.[4] Appellant had argued to the probate court that our decision in *Orshansky I* had voided Mr. Jordan's appointments retroactively and completely, and, therefore, he was not entitled to any compensation for those services. The probate court, however, "decided to defer the matter [of the pending fee requests] ... until the New York court appointed a guardian [ ] or took other appropriate action," in order to permit such person to represent Ms. Orshansky with respect to the fee requests.

On April 22, 2003, the New York court requested that the D.C. probate court handle the matter of Mr. Jordan's compensation. The probate court held the matter in abeyance, however, citing concerns about developments in New York and appellant's "intimation of a law suit on Ms. Orshansky's behalf for her 'to be made whole.'"

On November 20, 2003, the D.C. probate court held a hearing on "any and all pending petitions." Later that day, the court denied appellant's request for compensation of attorney's fees from the public coffer via the Guardianship Fund, *see* D.C.Code § 21–2060. The court denied the request, and appellant does not challenge that aspect of the court's ruling on appeal.[5]

At the same hearing, the parties discussed whether Mr. Jordan should be compensated for his services as guardian and conservator or reimbursed for attorney's fees he incurred in defending against appellant's claims. In a ruling entered on January 23, 2004, the probate court divided Mr. Jordan's fee requests into three parts, depending on whether they concerned activities before, during, or after the original appeal. Pre-appeal fees and costs, the court noted, were "already awarded ... by Judge Christian on June 18, 2002...." Regarding post-appeal proceedings, the probate court recognized that "Mr. Jordan has eschewed requesting further fees after November 2002 *unless* there is an additional appeal in this case" (emphasis added)—a settlement offer that

porary and/or general guardian and conservator, filing a final account to wind up those assets, and proposing a distribution thereof. That distribution may include payment of attorneys' fees and expenses this court may eventually order herein. This final account shall be filed as of a date this court will order after it is informed of relevant action by the Supreme Court of the State of New York and determines the issues of pending attorneys' fees and objections to Mr. Jordan's accounts. In the meantime, Mr. Jordan is authorized to take any and all appropriate steps to conserve and maintain said assets, make payments required in order to do so, but may not pay any funds for the support of the subject to any other person without prior approval of this court. He should also extricate himself from control and access to any assets that are not solely under his present or former control. His bond of $2 million shall continue, but he should undoubtedly move the

court to reduce it in light of the more limited assets under his supervision.

4. The court's order included an "extensive recitation" as a means to coordinate with the New York court that, since this court's reversal, had been handling the bulk of the legal dispute over Ms. Orshansky's status.

5. The probate court explained that Mr. Jordan's remaining petitions for funds were timely, and that no counsel fees could be paid from the public Guardianship Fund (as suggested by appellant) because there was no danger that Ms. Orshansky's estate (valued at over $1.57 million with additional monthly income of $7200) would be "depleted" by the payment of fees. *See* D.C.Code § 21–2060(a) ("Compensation shall be paid from the estate of the ward or person or, if the estate of the ward or person will be depleted by payouts made under this subsection, from a fund established by the District [the Guardianship Fund]").

appellant, as it later turned out, rejected by filing this appeal.

Most of the court's order was devoted to the issue of legal fees incurred by Mr. Jordan during the course of the appeal that led to *Orshansky I*, totalling $18,015.46. The probate court laid out in detail why it felt obliged to defer to this court on the issue of fees related to the appeal, and concluded by ordering Mr. Jordan to file his fee petition with this court. We responded to Mr. Jordan's motion to this court for authority to pay his appellate counsel's fees from Ms. Orshansky's estate by order dated March 26, 2004, in which we referred the question back to the probate court, requesting that it apply the probate court rules to determine payment of fees related to the appellate proceeding.

In a detailed order entered on June 22, 2004, the probate court ruled on Mr. Jordan's pending fee requests for his services and for the attorney's fees he incurred on appeal.[6] The order began by noting that Judge Christian's June 2002 award of fees for Mr. Jordan's services as appointed counsel was issued while the appeal in *Orshansky I* was pending, and was itself never appealed; therefore, the trial court observed, appellant had waived her objection. But "[s]hould this waiver decision be determined erroneous by the appellate court if this case is further appealed," the court ruled, the same analysis by which it found Mr. Jordan entitled to compensation for services rendered after *Orshansky I* applied equally to the services before the appeal that were rendered pursuant to Judge Christian's appointments and covered by her compensation order. *Id.* The court chose not to question the amount of Judge Christian's fee award, as "law of the case." On the central matter of whether appellant should be compensated for his work as general guardian and conservator despite the ruling on appeal that his appointment should be vacated, the probate court noted that the issue was one of first impression. It determined that the governing statute, D.C.Code § 21–2060(a), unambiguously compelled a resolution in Mr. Jordan's favor, because the statute declares that court-appointed officers are "entitled to compensation for services rendered," and orders that "compensation shall be paid from the estate....." In response to appellant's argument that obeying this literal statutory command would produce "absurd results" in view of this court's decision that no conservator should have been appointed, the probate court reasoned that mandatory compensation under the statute avoids a greater evil, that "any of the myriad court appointees ... would be conflicted by arguable incentive to have the subject found incapacitated," if they were compensated only in that circumstance instead of anytime services are rendered pursuant to court order.[7]

---

6. The probate court noted that appellant had conceded that Ms. Orshansky was and remained incapacitated at the time, which eliminated the need for further appointment of counsel to establish her condition.

7. The probate court referred, by analogy, to the statute governing personal representatives, which provides that compensation is due, when "a personal representative ... defends or prosecutes in good faith and with just cause any proceeding relating to the decedent's estate, *whether successful or not.*"

D.C.Code § 20–752 (providing for compensation of personal representative for "necessary expenses and disbursements" in connection with "any proceeding relating to the decedent's estate") (emphasis added). The probate court added that "Mr. Jordan should [not] be made to suffer the consequences of trial court error, any more than he should be made to suffer the consequences of [appellant's] costly decision to spirit her aunt to New York."

The probate court found as a factual matter that "Mr. Jordan was doing what was expected of him by Judge Christian—no more, no less, and in good faith," and extended this finding to Mr. Jordan's defense of his position on appeal. Having determined that Mr. Jordan was entitled to legal fees, the court used "the lodestar method" to determine the amount of the appellate attorney's fees, and explained the details of that well-established practice. Noting some minor errors and excessive hours in the fee request, the probate court awarded $43,067.50 of the $45,951 requested for services as guardian and conservator to November 20, 2002, and the full $18,015.46 requested for appellate attorney's fees. The court noted that the total amount ($61,082.96) amounted to less than 4% of Ms. Orshansky's known estate, "a lower proportion than for many, if not most, of the intervention cases this Division sees." [8] The probate court delayed payment, however, "until the time for noticing an appeal has passed or pending the outcome of any such further appeal," because, in the event of such appeal, Mr. Jordan retained the right to request further fees, and because a final "accounting must be made" pursuant to his duty to manage that part of Ms. Orshansky's estate under his control as special conservator. See note 3, *supra.*

Appellant filed a motion for "correction, amendment and reconsideration" on July 13, 2004, which the probate court denied on August 21, 2004, although the order was not entered until September 1, 2004. The court noted that, in addition to the reasons it had given earlier for granting Mr. Jordan's fee requests, the motion for reconsideration was denied because many of the "reconsideration requests come too late, as they were long since appealable," while others were "raised for the first time," such as a request for "return of . . . documents."

Appellant then filed, on September 30, 2004, a notice of appeal (No. 04–PR–1317) citing the probate court's orders dated June 18, 2002 (Judge Christian's order awarding fees for Mr. Jordan's service as appointed counsel), March 28, 2003 (Judge Wolf's order appointing Mr. Jordan as Special Conservator), November 20, 2003 (Judge Wolf's order denying appellant's request for attorney's fees from the Guardianship Fund),[9] June 22, 2004 (Judge Wolf's order awarding Mr. Jordan's fees as general conservator and guardian and appellate attorney's fees), and September 1, 2004 (Judge Wolf's order denying appellant's motion for reconsideration of June 22 order).

On December 9, 2004, the probate court accepted Mr. Jordan's final accounting for filing and reduced his bond; appellant has not challenged this order except as it pertains to Mr. Jordan's accounting of Ms. Orshansky's personal property.

On January 21, 2005, the court ruled on Mr. Jordan's supplemental fee petition for services rendered as special conservator, covering the period up to October 15, 2004. The supplemental petition faced the probate court, for the first time, with the question of whether Mr. Jordan was due compensation for his work as special conservator, from his appointment *nunc pro tunc* as of August 15, 2002, the date of

---

8. In the June 22 order the probate court had mistakenly said that the fees amounted to less than .04%; it corrected the number to be 4% in a supplemental order docketed June 30, 2004.

9. Although the November 20, 2003 order is listed on the notice of appeal, appellant's briefs present no arguments challenging Judge Wolf's ruling denying payment of fees from the Guardianship Fund. See note 5, *supra.*

*Orshansky I* reversing his appointment as general guardian and conservator. The court first noted that Mr. Jordan had retained a right to request fees for such services if appellant filed another appeal (which she had), and explained that Mr. Jordan's entitlement to fees turned on whether the services had been performed pursuant to the probate court's appointment. The court observed that "[t]he correctness of this court's decision to appoint a special conservator has been waived (including the retroactivity [to *Orshansky I*])" because of appellant's failure to timely appeal the appointment. In any event, the court stated, the appointment of a special conservator for a limited purpose was justified due to the unresolved court action pending in New York and the continuing uncertainty surrounding the estate. In analyzing the amount of Mr. Jordan's fee request, the probate court blamed appellant's "relentless, unconstrained, and, in some respects, malicious" litigiousness for creating more work for Mr. Jordan, resulting in higher fees, and explained its opinion in detail. The court awarded Mr. Jordan $16,294 in fees for his services as special conservator—$2,000 less than requested—and $348.67 in expenses. This time, the probate court did not enter an order *sua sponte* staying payment of the fees pending appeal.

In a subsequent notice of appeal (No. 05–PR–209), filed on February 18, 2005, appellant added the orders of December 9, 2004 (accepting Mr. Jordan's final accounting of Ms. Orshansky's property), and January 21, 2005 (compensating Mr. Jordan for services as special conservator), to the list of those on which she seeks our review and reversal.

## II.

### Jurisdiction

■ As an initial matter, we must determine whether we have jurisdiction over the orders for which appellant seeks review. The appellate jurisdiction of this court is statutorily limited to the review of "final orders and judgments of the Superior Court of the District of Columbia," D.C.Code § 11–721(a)(1) (2001), and a limited class of interlocutory orders. *See id.* at (a)(2); Super. Ct. Prob. R. 8(a) ("Any person who is aggrieved by a final order or judgment of the Probate Division of the Superior Court . . . and who participated in the determination of that order or judgment may file an appeal therefrom to the District of Columbia Court of Appeals."). Under our rules, we "lack[ ] jurisdiction to consider an appeal filed more than thirty days after the entry of the order being appealed." *Bratcher v. United States,* 604 A.2d 858, 859 (D.C.1992); *see* D.C.App. R. 4(a)(1).

■ The Superior Court Probate Rules settle which orders, among those "determining rights of any interested person or party in any intervention proceeding[,] shall be deemed final" for purposes of appeal. Super. Ct. Prob. R. 8(d);[10] *cf.*

---

10. Rule 8. Appeals

(d) *When Allowed—All other proceedings.* Notwithstanding section (b) of this rule, all orders and judgments of the court determining rights of any interested person or party in any intervention proceeding shall be deemed final with respect to matters provided for in subsections (1) through (8) of this section as follows:

(1) Order appointing, removing or denying a request to appoint or remove a permanent guardian, permanent conservator, special conservator, trustee or other permanent fiduciary;

(2) Order granting or limiting the rights, powers or duties of a permanent guardian, permanent conservator, special conservator, trustee or other permanent fiduciary;

*In re Corsetti*, 928 A.2d 691, 692 (D.C. 2007) (recognizing that Superior Court Probate Rule 8(d) defines final orders in intervention proceedings). One of the eight classes of final orders listed in Probate Rule 8(d) is an "order appointing, removing or denying a request to appoint or remove a permanent guardian, permanent conservator, special conservator, trustee or other permanent fiduciary." Super. Ct. Prob. R. 8(d)(1). We implicitly recognized this rule when we agreed in *Orshansky I* to adjudicate the question of whether "the court abused its discretion when it rejected Ms. Orshansky's own arrangements . . . [and] appointed Mr. Jordan." 804 A.2d at 1079. Judge Wolf's March 28, 2003 order implementing our decision to vacate Mr. Jordan's appointment as general conservator and re-appointing him as special conservator (both of which took effect as of *Orshansky I*) also meets this definition of "final order." As appellant's notice of appeal challenging that order was filed on September 30, 2004—more than eighteen months later—we have no jurisdiction to consider the probate court's order appointing Mr. Jordan as special conservator.

An "order granting or denying compensation" is also a final order for purposes of appeal. Super. Ct. Prob. R. 8(d)(4). Working in reverse chronological order, there are no timeliness problems regarding the order of September 1, 2004, denying reconsideration of the order awarding compensation for services as general conservator and for appellate fees during *Orshansky I,* or the order granting compensation for special conservator services entered by Judge Wolf on January 21, 2005, since neither one was entered more than thirty days before the notices of appeal filed on September 30, 2004 and February 18, 2005. *See* D.C.App. R. 4(a)(1).

 But appellant also seeks our review of other orders that were entered earlier. Orders granting attorney's fees are interlocutory until both the underlying action and the adjudication of fees are complete (except for the possibility of fees generated by the act of appealing that final order); otherwise this court would have to review fee awards that are still subject to change. *See Dyer v. William S. Bergman & Assocs.,* 635 A.2d 1285, 1288 (D.C.1993). Therefore, the orders dated June 18, 2002, March 28, 2003, and November 20, 2003, were interim orders that were made final by the order issued on June 22, 2004, which awarded Mr. Jordan fees as appointed counsel and general guardian and conservator and attorney's fees on appeal in *Orshansky I,* where this court decided the underlying question of the appointment itself. Appellant filed a "motion for correction, amendment, and reconsideration" of that final order on July 13, 2004. The motion refers to no rule or case law, instead focusing on "factual error," "mischaracterizations," and perceived oversights. In that regard, it appears more analogous to a Superior Court Civil Rule 60 motion than a Rule 59 motion.[11] As we

(3) Order approving any account, or granting or denying an exception or objection to any account;

(4) Order granting or denying compensation;

(5) Order determining title to assets;

(6) Order determining that property should be sold;

(7) Order determining a claim against a protected person or property of a protected person;

(8) Order granting or denying authority to make gifts.

Super. Ct. Prob. R. 8(d).

11. "Except where inconsistent with the provisions of the Probate Division Rules or the traditionally uncontested and administrative

have explained, however, since the amendments to Court of Appeals Rule 4 which took effect in January 2004, "Rule 4 has been revised and no longer requires [a] case-by-case evaluation of the nature of a motion—*i.e.,* whether properly characterized as a Rule 59 or Rule 60 motion—in order to determine whether an appeal is timely," with respect to motions filed within ten days as required by Court of Appeals Rule 4(a)(4)(A)(v). *Nichols v. First Union Nat'l Bank,* 905 A.2d 268, 271 (D.C. 2006). Since appellant's motion was not filed within ten days, however, it did not toll the time to appeal the underlying orders, and the window to invoke our jurisdiction to review those orders which, as noted, were made final on June 22, 2004, closed thirty days later, on July 22, 2004. The first appeal, however, was not filed until September 30, 2004.

What we have jurisdiction to review, therefore, is limited to the probate court's September 1, 2004 order denying appellant's motion to "reconsider" the June 22 order awarding Mr. Jordan's fees as general guardian and conservator, *i.e.,* to alter the judgment, viewed as a Rule 60 motion, as well as the orders entered on December 9, 2004 (which appellant challenges only with respect to the accounting of Ms. Orshansky's personal property), and January 21, 2005 (awarding Mr. Jordan's fees as special conservator), which, as noted above, were timely appealed. We turn, therefore, to review the merits of appellant's challenges to these orders.

### III.

### Payment to court-appointed fiduciaries

A. *Entitlement to Fees*

Mr. Jordan has been tasked by the probate court in a number of roles in

this case—as Ms. Orshansky's court-appointed attorney, *Orshansky I,* 804 A.2d at 1081, temporary guardian and conservator, *id.* at 1082, general guardian and conservator, *id.* at 1089, and, by appointment of J. Wolf, in response to *Orshansky I,* as special conservator.

> In considering an order or judgment from the probate division where the case was tried to the bench, this court may review both as to the facts and the law, but the judgment may not be set aside except for errors of law unless it appears that the judgment is plainly wrong or without evidence to support it. This court reviews the trial court's interpretation of a statute *de novo.*

*In re Sato,* 878 A.2d 1247, 1250 (D.C.2005) (quoting D.C.Code § 17–305(a) (2001)). In *Orshansky I,* we concluded that the probate court's appointment of Mr. Jordan as general guardian and conservator was in error, and ordered that the appointment be vacated. Appellant argues that because the vacatur of his appointment as general conservator and guardian should have been *ab initio,* no fees for services in that capacity should have been approved by the court.

We cannot agree with such a sweeping assertion for, although we strongly disapproved of the proceedings that led to the appointment of a general conservator and guardian for Ms. Orshansky, and ordered that it be vacated, we remanded the case to the probate court:

> We reverse the decision and orders of the probate court, and vacate the appointments of Harry Jordan as guardian and conservator of Mollie Orshansky. *We remand for further proceedings in*

proceedings therein, the Superior Court Rules of Civil Procedure are applicable to proceedings in the Probate Division." Super. Ct.

Prob. R. 1(f) (2004). No probate rules concern amendment of judgments, so we default to the Civil rules.

accordance with this opinion, to the extent that the probate court determines that further proceedings are advisable for the protection of Ms. Orshansky, taking into account the pending proceedings in New York.

*Orshansky I*, 804 A.2d at 1104 (emphasis added).

■ Our remand, in other words, did not specifically instruct the probate court to vacate the appointment *ab initio*, and allowed a measure of discretion to the probate court in light of the parallel proceeding in New York.[12] We have earlier set out the probate court's reasons for vacating Mr. Jordan's appointment as general guardian and conservator and reappointing him as special conservator with limited authority, both actions effective as of *Orshansky I*. As discussed in the previous section, the appeal challenging those rulings is untimely and thus outside our jurisdiction. Our inability to review the probate court's determination is irrelevant to the issue of compensability, however, because whether a fiduciary appointed by the probate court is due compensation from the subject's estate under the Guardianship Act does not depend on whether the probate court's appointment was in error. Service in good faith pursuant to court order is compensable, regardless of whether the probate court erred in making the appointment. The statute declares that "as approved by order of the court," persons appointed pursuant to the Guardianship Act[13] are "*entitled* to compensation for services rendered," and orders that "compensation *shall* be paid from the estate of the ward [or person]...." D.C.Code § 21–2060(a) (emphasis added). In cases where the estate would be "depleted by payout[ ]," *id.*, the fiduciary is not denied payment, rather payment is made from the Guardianship Fund. *See id.* §§ 21–2060(a) & (b). The court's task in interpreting a statute begins with its language, and, where it is clear, and its import not patently wrong or absurd, our task comes to an end. *See District of Columbia v. Place*, 892 A.2d 1108, 1111 (D.C.2006) (internal citations omitted). Appellant argues that it would be absurd for the estate to have to pay fees for a conservator who never should have been appointed. Setting aside that the probate court gave reasons why the general conservatorship should be vacated as of *Orshansky I* (in light of the prior proceedings in this case) and that a special conservator was needed (to coordinate the parallel proceeding in New York), as the probate court observed more generally, the interpretation urged by appellant could cause "any of the myriad court appointees ... [to] be conflicted by arguable incentive to have the subject found incapacitated." There is no evidence that the legislature intended to create such a perverse incentive, and so we see no reason to depart from the statute's plain meaning.[14] Like the probate

---

12. Appellant filed a "motion for clarification" after *Orshansky I* requesting "confirmation that all appointment[s] of Harry Jordan by Judge Christian are vacated Nuc (sic) Pro Tunc as of their date of inception." We denied the motion by order dated April 7, 2003.

13. These include "any visitor, attorney, examiner, conservator, special conservator, guardian *ad litem*, or guardian." D.C.Code § 21–2060(a). These terms are defined in the statute. *See* D.C.Code § 21–2011.

14. The section-by-section analysis of the Report of the Committee of the Judiciary which reported out the Guardianship Act, states that D.C.Code § 21–2060 "*[r]equires reasonable compensation,* as directed by the court; for any visitor, attorney, examiner, conservator or special conservator for services rendered in a protective proceeding. The compensation *shall come from the estate itself,* or from a fund established by the District of Columbia for that purpose." REPORT OF THE COMMITTEE ON THE JUDICIARY ON BILL 6–7, "The District of

court, we see no reason to interpret the statute in a way other than to give effect to its plain meaning.

We do not mean to suggest that court-appointed fiduciaries must always be compensated regardless of their performance, or the detriment they cause to their ward or that person's estate. Compensation under the statute is "as approved by order of the court," D.C.Code § 21–2060(a), which properly would take such factors into account. But appellant's principal argument that Mr. Jordan should not be compensated is based on her attack on the appointment itself. She does not, however, contend that Mr. Jordan acted outside the scope of his court-granted authority, or did not act in good faith. The probate court found that his services were reasonable and rendered in conformance with the court's appointments.[15]

## B. *Assessment of Fees*

The only remaining matters for our review are the amounts awarded by the probate court for Mr. Jordan's services. Since appointing Mr. Jordan as special conservator, the probate court approved $16,294 in fees for Mr. Jordan's services, including Mr. Jordan's work in defense of his right to fees, and $348.67 in expenses. In granting the fees, the probate court noted that Mr. Jordan's hourly fee ($185 for administrative work; $200 for legal work) was relatively "low," and reduced the requested amount by disapproving twenty hours of legal work on the opposition to appellant's motion for reconsidera-

tion, which the probate court found to be "excessive."

We review the award of fees for abuse of discretion, *see Henderson v. District of Columbia*, 493 A.2d 982, 1001 (D.C. 1985), and perceive none in this case. We gave no instruction concerning fees, either in *Orshansky I* or in our unpublished order referring the initial determination on appellate attorney's fees to the probate court. *See District of Columbia Metro. Police Dep't v. Winfred L. Stanley*, 951 A.2d 65, 67 (D.C. 2008) ("Because fee petitions raise factual questions, such as what work counsel performed, whether that work was necessary and appropriate, and how it ought to be compensated, they should presumptively be addressed first at the trial court level.") The probate court properly applied the lodestar method for attorney's fees, which has long been approved by this court, after reviewing the reasonableness of the time expended, and adjusting the compensable hours billed. *See, e.g., Fed. Mktg. Co. v. Va. Impression Prods. Co.*, 823 A.2d 513, 530 (D.C.2003) ("In most situations, a reasonable fee is computed by first determining the so-called lodestar—the number of hours reasonably expended by counsel multiplied by a reasonable hourly rate—and then, 'in exceptional cases,' making upward or downward adjustments as appropriate.") The probate court was of the view that some of the attorney's fees had been occasioned by appellant's aggressive litigation, to which Mr. Jordan was compelled to respond. *See Henderson*, 493 A.2d at 1001

Columbia Guardianship, Protective Proceedings and Durable Power of Attorney Act of 1986." (June 18, 1986) (emphasis added). As noted in the text, the statute provides for payment from the Guardianship Fund only if the estate were to be depleted by the payments. Here the probate court found that Ms. Orshansky's estate did not face such risk. See note 5, *supra*.

15. We have considered and reject as completely unsupported appellant's argument that the payment of fees from the estate violates Ms. Orshansky's constitutional rights to due process and equal protection.

("[W]hile [p]arties against whom [ ] fee awards may be sought are 'not required to yield an inch or to pay a dime not due, they may by militant resistance increase the exertions required of their opponents and thus, if unsuccessful, be required to bear that cost.' ")

For the same reason that we conclude that the probate court did not abuse discretion in compensating Mr. Jordan for his services as special conservator, we affirm the probate court's denial of appellant's motion to alter the judgment authorizing compensation for his services and attorney's fees as attorney, general conservator and guardian (pre-*Orshansky I*). In light of the probate court's careful review of the fee requests and adjustment of the fee requested, we cannot say that the court abused its discretion in denying appellant's motion to reconsider.[16]

ACCORDINGLY, the judgment of the probate court is affirmed, and the case is remanded only to the extent necessary to wind up the probate court's involvement in the estate of Ms. Orshansky, including the disposition of any correspondence, papers, other personal effects,[17] or funds not necessary to compensate Mr. Jordan pursuant to the probate court's award for services rendered and attorney's fees, including any fees the court may award, as appropriate, in connection with this appeal.

*So ordered*

16. On June 18, 2002, Judge Kaye Christian granted $6,240 out of the $7,800 requested as compensation for Mr. Jordan's services as Ms. Orshansky's attorney, prior to the probate court's appointment of him as general conservator and guardian. On June 22, 2004, after noting some minor errors and excessive hours, the court awarded $43,067.50 of the $45,951 requested for services as general guardian and conservator, and $18,015.46 requested for appellate attorney's fees incurred in *Orshansky I*. As discussed, appeal of these fee awards was untimely, and we have jurisdiction to review only the trial court's denial of appellant's motion to reconsider.

17. Appellant mentions in passing that Mr. Jordan controls certain personal effects, appraised at $10,223, that Ms. Orshansky had when she lived in the District, but could not take with her when she moved to New York. Appellant characterizes these effects as "nonexistent" (because they had been given away) or "garbage," and we assume she makes no serious claim to them.