*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

## 19-PR-845

IN RE BRUCE E. GARDNER, APPELLANT.

Appeal from the Superior Court
of the District of Columbia
(INT-329-16)

(Hon. Natalia M. Combs Greene, Hon. Ronald P. Wertheim, and
Hon. Jonathan H. Pittman, Trial Judges)

(Submitted September 15, 2020                    Decided February 3, 2022)

*Bruce E. Gardner*, pro se.[*]

Before BLACKBURNE-RIGSBY, *Chief Judge*, and EASTERLY and MCLEESE, *Associate Judges*.

EASTERLY, Associate Judge: Appellant Bruce E. Gardner is a guardian ad litem appealing an order that denied him full payment on a supplemental fee petition. Mr. Gardner requested and ultimately received $10,950 for the 36.5 hours of work he did for his court-appointed ward, L.B., but only after he filed a response to objections from L.B.'s daughter, C.B., and an amended fee petition. In his

---

[*] No Appellee's Brief was filed.

supplemental fee petition, Mr. Gardner requested payment of $6,840 for the 22.8 hours of work he asserted he did to "defend his right to" receive the $10,950 payment and to prepare the supplemental fee petition itself. Concluding that Mr. Gardner had in his supplemental fee petition impermissibly sought compensation for "administrative overhead" work and that the number of hours billed for work was "unreasonable," the Superior Court awarded him only $2,580.

Mr. Gardner challenges the Superior Court's order denying full payment on his supplemental fee petition on a number of grounds. He argues: (1) he was automatically entitled to the full payment of the $6,840 he requested in his supplemental fee petition because his defense of his request for $10,950 for his court-appointed work was "a complete success" and his amended petition was granted in full; (2) the court took more than sixty days to rule on his supplemental petition and thus should be deemed to have "acquiesced" to full payment, plus interest, of the amount requested; and (3) the Superior Court's reasons for awarding him only partial payment were either wrong or inadequately explained.

Preliminarily, we reject Mr. Gardner's arguments that he was entitled to full payment of the amount requested in his supplemental fee petition either because his request for payment for his court-appointed work was ultimately granted in full or

because the Superior Court did not rule on his supplemental fee petition within sixty days. These arguments have no legal foundation. A fiduciary's request for payment for efforts to obtain compensation must always be assessed for reasonableness, *In re Robinson*, 216 A.3d 887, 890 (D.C. 2019), and while we encourage trial courts to resolve all fee petitions in a timely manner, Mr. Gardner's sixty-day deadline does not exist in the probate statute or rules.

We conclude, however, that remand is required first because the trial court did not address whether Mr. Gardner was entitled to his legal rate of compensation for his work as a guardian ad litem and second because we agree with Mr. Gardner that the Superior Court did not adequately explain why it awarded him the compensation it did. Mr. Gardner's concern is that the court failed to explain why certain hours were "unreasonable" and paid him too little. Our concern is that the court failed to explain why it paid him so much. In particular, it is unclear why the court focused exclusively on the reasonableness of Mr. Gardner's request for payment for 10.1 hours devoted to drafting and revising his amended and supplemental fee petitions; apart from rejecting time spent reviewing irrelevant IRS regulations, the court said nothing about the reasonableness of hours billed for seemingly equally irrelevant work in connection with those pleadings or for work on his (unsuccessful) response to C.B.'s challenge to his initial fee petition.

More fundamentally, we see no indication in the Superior Court's order that, in assessing the reasonableness of Mr. Gardner's supplemental fee petition, the court considered why Mr. Gardner had to defend his right to receive the compensation he had requested in his initial fee petition in the first place: Mr. Gardner billed L.B.'s estate for roundtrip visits in excess of $2,000 from an outside-the-beltway Maryland address which he identified as his office but which C.B. informed the court was a mailbox at a UPS store. Mr. Gardner's initial misrepresentations about the point of origin for his travel necessitated the filing of both his response to C.B.'s objections and—because that response only raised more questions related to his stated downtown D.C. address in his signature block—his amended fee petition. In other words, much if not all of the additional work Mr. Gardner had to do to get paid for his court-appointed work was self-inflicted. We hold that a court may decline to compensate a fiduciary for such self-inflicted work, reaffirm the important oversight role trial courts have in reviewing fee petitions submitted by court-appointed fiduciaries, and direct the court to take this into consideration on remand.

## I. Facts and Procedural History

After L.B. had a stroke and moved into an assisted living facility near Dupont Circle, the Superior Court appointed Mr. Gardner, pursuant to D.C. Code § 21-2033(a) (2021 Supp.), to temporarily serve as L.B.'s guardian ad litem in September 2016. Mr. Gardner's appointment expired in December 2016.

In January 2017, Mr. Gardner filed an initial fee petition seeking payment from L.B.'s estate of $11,041.03: $91.03 for costs, and $10,950 for services rendered. Mr. Gardner attached to his petition an itemized statement identifying by date and brief description the hours of work (36.5 hours of service at a rate of $300/hour[2]) for which he was seeking payment. In his signature block, Mr. Gardner identified himself as a member of The Gardner Law Firm, P.C., and provided a downtown D.C. address—1101 Pennsylvania Avenue, NW, Suite 300, Washington, D.C. 20004—and a phone number. But in his itemized billing statement he

---

[2] Mr. Gardner explained that this was his court-approved rate for out-of-court work, regardless of whether he was appointed as counsel or as a personal representative, conservator, guardian ad litem, special master, or guardian, and that he charged $350/hour for in-court work.

represented without explanation that he had been traveling to visit L.B. from an "MD Office located at 12138 Central Ave, Mitchellville, MD."

L.B.'s daughter, C.B., objected to the fee petition. Her primary complaint related to Mr. Gardner's travel time.[3] She informed the court that Mr. Gardner's "so[-]called office" in Mitchellville, MD was in fact an address for a UPS store that Mr. Gardner used only to receive mail and accused Mr. Gardner of "unethical" behavior for "falsifying [his] address." She objected to him using that address to justify billing approximately two hours for multiple roundtrip visits to her father. She calculated, incorrectly, that the total travel and waiting time for these visits was $1,800; in fact, it was $2,250.

Mr. Gardner filed an eight-page response. Much of this filing was devoted to reviewing the history of his appointment, taking aim at C.B. for filing a petition for appointment of a temporary guardian for her father without adequate detail or the requisite certifications and without proper service, and detailing the various

---

[3] In a one-page letter to the court, C.B. also objected to Mr. Gardener's request for $1,050.00 for work done between December 10 and December 24, 2016, which she characterized as "administrative overhead," apparently referring to the time Mr. Gardner had billed to draft his initial fee petition.

interactions he asserted he had had with C.B. and other members of L.B.'s family for which he had not sought compensation. Less than a full page addressed the question of his office address. Without acknowledging that he listed a D.C. address in his signature block, he represented that he worked primarily from his home in Bowie, Maryland. He then explained that he used a different Maryland address, the Mitchellville, Maryland, UPS store address, in his itemized billing statement because, if he used his home address in public filings, a dissatisfied "person like [C.B.] could appear at [his] front door . . . or could threaten or harass [him]." He defended his travel time driving from Maryland by arguing that it would have been more time-consuming and costly for him to take the metro or a cab, but did not address whether he should have been billing for travel from a dummy location outside the District in the first place.

In a March 2017 order, the Superior Court (Combs Greene, J.) denied Mr. Gardner's fee petition without prejudice. The court explained that, if the allegation that the Mitchellville address was not Mr. Gardner's law office but a UPS Store "is correct, [then] the [c]ourt would agree that Petitioner's travel expenses to and from Maryland are not reasonable." The court further indicated that it was not satisfied with Mr. Gardner's explanation that he had listed the UPS store address as his office address in his billing statement because he received mail there; the court observed

that a location where one receives mail is "quite different than an 'office,'" and expressed confusion why he would bill L.B. for travel to and from such a location. Further, the court deemed it "important[]" that Mr. Gardner "on the instant filing" (as on his initial fee petition) had "list[ed] his office address as 1101 Pennsylvania Ave NW, 300[,] Washington DC[,] 20004," noting that address "would have been the appropriate location from which to travel to visit [L.B.]" in Dupont Circle. The court denied his initial fee petition, but stated it would give Mr. Garner another "opportunity to explain" the 7.5 hours[4] he had billed for roundtrip travel to see L.B. and to provide a "specific and supported" explanation regarding his "various offices."

Mr. Gardner filed a seven-page Amended Fee Petition with over sixty pages of exhibits in April 2017. Regarding the location of his office he stated that (1) his "exclusive" place of business for his probate work was his home in Bowie, Maryland;[5] (2) the Mitchellville, Maryland UPS store address was the official

---

[4] The court provided a chart of the dates and hours about which it had concern.

[5] Although the court had not asked him to submit any photographs of his home office, Mr. Gardner attached eight photographs to his amended fee petition, declaring that they "provide[d] an unprecedented look inside his basement Bowie-Maryland home office by this [c]ourt that no other member of the fiduciary panel has ever been subjected to." To substantiate this assertion, he attached a fee petition

address of his separate tax preparation business where no probate work was done; and (3) the D.C. address in his signature block was a virtual office[6] used by The Gardner Law Firm, P.C., a separate corporate entity, but that he took probate appointments in his personal capacity and did no probate work at that location either.[7] Regarding the time he had billed for his visits to L.B., Mr. Gardner argued that there was no requirement that he "had to originate his travels from any office," but represented that all the roundtrip travel time about which the court had expressed concern, *see supra* note 4, "originated from [his] Bowie-Maryland home office." Other than insinuating that the court was already aware that he was working from Maryland because court personnel had called and faxed him at numbers with a 301 area code, and asserting without citation that "[t]his [c]ourt has previously held [sic] fiduciaries do not have to disclose their home addresses in their fee petitions for privacy and safety reasons," he did not address why he had not provided full and

---

from L.B.'s court-appointed counsel. Mr. Gardner also attached two IRS publications discussing tax deductions for home offices and work travel.

[6] *See* Regus Virtual Offices, https://www.regus.com/en-us/virtual-offices; https://perma.cc/SUK4-2UQG (last visited Jan. 18, 2022).

[7] Mr. Gardner represented that he, in his personal capacity, had an "agreement with the Firm" to use "the Firm's address to receive mail" at the D.C. address, but "there would be no logical reason," to use that D.C. location to calculate the mileage for him to visit L.B.

accurate information about his office location and the point of origin of his travel in his initial fee petition.

Mr. Gardner's amended fee petition went to a different Superior Court judge (Wertheim, J.), who, in a one-page order without analysis, granted in full Mr. Gardner's initial request for $11,041.03 in fees and costs.

Sixteen months later, in September 2018, Mr. Gardner filed a supplemental fee petition, seeking a total of $6,960.27: $120.27 in costs and $6,840 for the 22.8 hours of work done (at the same rate of $300/hour) "defending[] his rights to compensation." The latter figure included time spent preparing his (1) response to C.B.'s objection, (2) his amended fee petition, and (3) his supplemental fee petition. He included in the fee request the time spent taking pictures of his home office, reading fee petitions submitted by other court-appointed fiduciaries in the case, reading IRS materials, and reviewing the case file.

Eleven months later, in August 2019, another Superior Court judge (Pittman, J.) issued an order granting the supplemental petition only in part. At the outset of

its order, the court juxtaposed Mr. Gardner's "almost $7,000" supplemental petition against his initial petition for $10,950 for work actually done on L.B.'s case. The court explained that it would not authorize compensation for "fees and expenses for tasks that are properly considered administrative overhead." Specifying dates, the court put a total of 5.1 hours of work in this category:

> the 1.5 hours . . . and the .3 hours . . . that Mr. Gardner spent preparing his billing statement, the several instances in which he billed the estate .2 hours for electronically filing his petitions . . . 1.8 hours spent procuring scan[ed] copies of exhibits to his petition . . . and [the] .7 hours he spent driving to a bank to get his petition notarized . . . .

The court separately declined compensation for one hour Mr. Gardner spent "reading two IRS publications, the purpose of which is not clear." Lastly, the court concluded that the hours it calculated Mr. Gardner spent "preparing his amended fee petition"[8] (4.7) and "his supplemental fee petition" (5.4) were "unreasonable." The court permitted compensation only for one hour for the preparation of each fee petition, but did not explain how it arrived at that figure.

Thus, out of the 22.8 hours Mr. Gardner requested, the court awarded him payment for only 8.6 hours. Subtracting two hours the court awarded for the

---

[8] The court only included time attributed to drafting the amended and supplemental fee petitions, not the work done in advance of drafting.

preparation of the amended and supplemental fee petitions, the court's decision to award payment for the other 6.6 hours of work was unexplained. These hours appear to include work Mr. Gardner did to compile and review certain materials (but not the IRS manuals) in preparation for drafting those filings, *see supra* note 8, as well as all the work Mr. Gardner did on his response to C.B.'s opposition to his initial fee petition. Without further explanation, the court granted Mr. Gardner $2,580 (8.6 x $300/hour) in compensation. This timely appeal followed.

## II. Analysis

### A. Standard of Review

The compensation provision of the Guardianship Act, D.C. Code § 21-2060(a) (2012 Repl. & 2021 Supp.) provides:

> As approved by order of the court, any case reviewer, visitor, attorney, examiner, conservator, special conservator, guardian ad litem, or guardian is entitled to compensation for services rendered either in a guardianship proceeding, protective proceeding, or in connection with a guardianship or protective arrangement.

*Accord* Super. Ct. Prob. R. 308(a) (recognizing that court-appointed fiduciaries, including guardians ad litem, are entitled to compensation). Payment is made from the estate of the incapacitated person the fiduciary is appointed to assist, "or, if the

estate of the ward or person will be depleted by payouts made under this subsection, from a fund established by the District." D.C. Code § 21-2060(a). In addition to being compensated for their court-appointed work, a court-appointed fiduciary may be compensated for work done to get paid. *In re Smith*, 138 A.3d 1181, 1185 (D.C. 2016) (holding the "in connection with" language of D.C. Code § 21-2060(a) extends "to permit the Superior Court, in its discretion, to approve compensation for a [fiduciary's] work on an appeal in pursuit of a claim for compensation . . . ."). "We review the denial of a compensation request for abuse of discretion and review the underlying legal principles de novo." *In re Robinson*, 216 A.3d 887, 890 (D.C. 2019).

**B. Whether the Superior Court erred in declining to award Mr. Gardner full payment on his supplemental fee petition either because he successfully defended his right to payment for his court-appointed work or because the court failed to rule on it within sixty days**

Mr. Gardner makes two arguments that he was entitled to full payment on his supplemental petition as a matter of law.

First, Mr. Gardner argues that he was entitled to full payment for the work he did to obtain compensation because this work was a "complete success" and he ultimately received full payment for his court-appointed services. We reject this argument. In *In re Orshansky*, we explained that it is not the law that "court-appointed fiduciaries must always be compensated regardless of their performance, or the detriment they cause to their ward or that person's estate." 952 A.2d 199, 211 (D.C. 2008). But we did not endorse the converse rule that whenever a court-appointed fiduciary prevails in a dispute about payment for court-appointed work, they are entitled to payment for any and all work done to obtain compensation. Instead, we reaffirmed that all "[c]ompensation under the statute is 'as approved by order of the court.'" *Id*. (quoting D.C. Code § 21-2060(a)). As we have held, such approval is contingent on an assessment of the reasonableness of a court-appointed fiduciary's fee petition. *In re Robinson*, 216 A.3d at 890 (explaining fiduciaries are required to detail "(A) the character and summary of the services rendered; (B) the amount of time spent; and (C) the basis of any hourly rate(s) of compensation" pursuant to Super. Ct. Prob. R. 308 precisely so that a trial court can "carefully scrutinize[]" the request for payment and ensure it is both adequately substantiated and reasonable (brackets omitted)).[9] The fact that a second Superior Court judge

---

[9] Mr. Gardner suggests he was entitled to full payment of his supplemental fee petition simply because he documented his time with adequate specificity and used

approved Mr. Gardner's amended fee petition in a one-page order with no analysis says nothing about whether the work done to obtain that compensation was reasonable (and as discussed below, *see infra* Section II.D., we have grave concerns that it was not).

Second, Mr. Gardner argues that his supplemental fee petition should have been granted in full because the Superior Court did not rule on his request within sixty days. Mr. Gardner concedes that the statute authorizing payment to court-appointed fiduciaries is "silent" on the timing of payment, D.C. Code § 21-2060(a).[10] Nevertheless, he asserts a reasonably timely payment requirement must be read into the statute.[11] Further, because he asserts without citation that "[t]he probate court's

the lodestar method to calculate his fees. But as we explained in *In re Brown*, 211 A.3d 165, 169 (D.C. 2019), "specificity of the information in a petition is only a threshold requirement for obtaining fees under the Rule [and] payment of the specifically identified fees does not automatically follow. A trial court . . . must take the additional step of ensuring that the fees themselves are reasonable." (internal quotation marks omitted).

[10] Super. Ct. Prob. R. 308(i)(1) speaks to timing, but only with respect to the disposition of fee petitions requesting compensation from the Guardianship Fund. It directs that the Superior Court "shall enter an order disposing of any request for payment from the Guardianship fund, including a petition to which exceptions or objections are filed or a motion for reconsideration of an order for payment from the Guardianship Fund, within 30 days of the filing of such request." *Id.*

[11] Incorrectly suggesting that this court has already opined on this issue, Mr. Gardner literally reads a timely-decision requirement into this court's opinion in

website states a petition for compensation will be decided within sixty calendar days from the date the fee petition is filed," he argues "sixty days is deemed by the probate court as a 'reasonable time period' for the court to decide a fee petition to be paid from the ward's funds." Lastly, he argues that where the Superior Court fails to rule on a fee petition within this website-based deadline, the court should be deemed to have "acquiesced" to full payment of the fees requested and that the court-appointed fiduciary should be granted prejudgment or pre-award interest under D.C. Code § 15-908 (2012 Repl.) for every day after the sixty-day deadline that payment is delayed. For multiple reasons, we reject this argument as well.

We as a division of the Court of Appeals have no authority to write a timing requirement into either D.C. Code § 21-2060(a) or the Superior Court Rules of the Probate Division. Such policy decisions are the province respectively of the legislature, *District of Columbia v. Pierce Assocs.*, 527 A.2d 306, 311 n.10 (D.C. 1987) (statutory reform is the province of the legislature, not the courts), and the

---

*Smith* by inserting the word "timely" into a quotation from that opinion. Our decision in *Smith* had nothing to do with timeliness of payment and said nothing on this topic. *See, generally, In re Smith*, 138 A.3d at 1186. Mr. Gardner also cites to our decision in *In re Grooms*, 123 A.3d 976 (D.C. 2015), which concerned the denial of a court-appointed fiduciary's untimely filed fee petitions and did not speak to Mr. Gardner's argument that courts should be subject to deadlines enforced with financial penalties.

Superior Court Board of Judges assisted by its Rules Committee, *see Moghalu v. United States*, 263 A.3d 462, 478 n.2 (D.C. 2021) (Easterly, J. concurring) (explaining the court rule promulgation process). We would decline to construe a statement on the Probate Court's website as proxy for a court rule even if it supported Mr. Gardner's argument. But the only content on the Probate Court's website addressing the timing of rulings on fee petitions simply states that "[p]etitions for compensation are *generally* considered by the Court within sixty days of filing." (emphasis added).[12] Furthermore, even if a deadline for resolution existed (as for example, when payment is sought from the guardianship fund, Super. Ct. Prob. R. 308(i)(1)), Mr. Gardner has provided no support for his argument that a court-appointed fiduciary should be entitled to interest on a delayed award of fees because of the probate court's "excessive, unreasonable, and conscionable! [sic]" delay. The statute to which he cites, D.C. Code § 15-908, has no relevance to compensation for court-appointed fiduciaries. It is located in Chapter 9 of "Uniform Foreign-Money Claims." Finally, while we agree in principle that the Probate Court should strive to rule on fee petitions within a reasonable amount of time, we have no reason on this record to doubt its commitment to doing so. Mr. Gardner's initial fee petition was

---

[12] *See* Intervention Proceedings Frequently Asked Questions, https://www.dccourts.gov/services/faqs/filtered?location[0]=int-iddlegal&location[1]=int&location=intervention; https://perma.cc/P6P5-QRLE (last visited Jan. 18, 2022).

denied within eight weeks of filing, and his amended fee petition was granted within six weeks of filing. The court's ruling on his supplemental fee petition took substantially longer, but for reasons the record does not explain, Mr. Gardner himself waited sixteen months to file this petition for payment.[13] It is possible this delay contributed to the ten-month delay in resolving his supplemental fee petition.[14]

**C. Whether the Superior Court erred in declining to allow Mr. Gardner to charge his legal rate for work and expenses it deemed "administrative overhead"**

Mr. Gardner also challenges the Superior Court's refusal to pay him for 5.1 hours of work and expenses it deemed "administrative overhead," *see supra* at 11–12, specifically, work done to prepare his billing statements, to electronically file his fee petitions, to copy and scan exhibits to his petition, and to drive to the bank to get his petition notarized and the associated mileage costs. Mr. Gardner charged his same hourly out-of-court rate, $300, for these tasks. He argues the probate court erred because (1) all of time for which he sought payment was for work he did

---

[13] Super. Ct. Prob. R. 308(c)(1) & (2) has timing requirements for guardians and conservators who file fee petitions but curiously does not have such requirements for guardians ad litem.

[14] Mr. Gardner's reference to another case in which this court denied his petition for a writ of mandamus directing the Superior Court to rule on a pending fee petition does not alter our view.

"*directly* related to the defense of his compensation and expenses for GAL services performed for the benefit of [L.B.]" and (2) the court's unexplained definition of what constitutes administrative overhead was overbroad.

Although we have flagged the issue, our court appears not to have squarely decided whether it is reasonable for guardians ad litem to charge their same out-of-court legal rate for both legal and nonlegal out-of-court-guardian-ad-litem work. *See, generally, In re Brown*, 211 A.3d 165, 169 & n.5 (D.C. 2019) (explaining that part of a court's task in assessing what payment pursuant to D.C. Code § 21-2060(a) is reasonable is considering the nature of the task and if it is non-legal whether it should "more appropriately [be] billed at a paralegal rate, or excluded altogether."). We conclude remand is required to address this issue. *Cf. In re Robinson*, 216 A.3d at 891 (remanding for the Superior Court to determine whether a guardian may be compensated at legal rates for performing nonlegal duties enumerated in D.C. Code § 21-2047(a)).[15]

---

[15] Assuming without deciding that guardians ad litem should be compensated the same way attorneys are, we reject Mr. Gardner's argument that the court's designation of certain nonlegal tasks as administrative overhead was "plainly wrong." As we explained in *Vining v. District of Columbia*, 198 A.3d 738, 753 (D.C. 2018), "[o]verhead expenses include [not only] . . . the rent and utility payments on a law office [but also] the salaries of receptionists, librarians, and clerical support

## D. Whether the Superior Court adequately explained its ruling

Lastly, Mr. Gardner argues the Superior Court abused its discretion by "stat[ing] in conclusory fashion" that the 10.1 hours he worked on his amended fee petition and supplemental fee petition, collectively, were unreasonable. As we have previously explained, when ruling on a fee petition, the Superior Court has an obligation to make a "record that elucidates the factors that contributed to the fee decision and upon which it was based," *District of Columbia v. Jerry M.*, 580 A.2d 1270, 1282 (D.C. 1990) (internal quotation marks omitted). Without such an explanation, our court cannot assess whether the Superior Court reasonably exercised its discretion. We agree with Mr. Gardner that the Superior Court did not adequately explain in its order why it had concluded that these 10.1 hours in aggregate were unreasonable or why it determined that it would compensate Mr. Gardner for two hours of his time. For this reason alone, remand is required.[16] But

---

staff, which are fixed costs not attributable to any individual case." The work done by "librarians, clerical personnel and other support staff . . . is assumed to be within the overhead component of a lawyer's fee." *Id*. at 754 n.20 (internal quotation marks omitted). An attorney may choose not to hire support staff to do this work for them, but that decision will not justify billing such work at the attorney's hourly rate.

[16] *See, e.g.*, *In re Robinson*, 216 A.3d at 891–92 (remanding for trial court to explain why it reduced the non-legal fee rate and why it chose $90 as the reduced rate); *In re Estate of McDaniel*, 953 A.2d 1021, 1024–25 (D.C. 2008) (per curiam)

for the reasons discussed below, we direct on remand a broader review of the court's supplemental fee award.[17]

Mr. Gardner sought compensation of 22.8 hours of work in all. As discussed, *see supra* 19–22, the court properly declined to pay him for 5.1 hours of administrative overhead and one hour of reading IRS manuals.[18] This left the 10.1 hours spent drafting the amended and supplemental fee petitions which the Superior Court disallowed as "unreasonable," (and reduced to two hours) and the 6.6 hours about which the court said nothing. The last figure was composed of time spent (1) reviewing materials for and drafting Mr. Gardner's unsuccessful response to C.B.'s

_____

(remanding for trial court to explain why it awarded compensation for fraction of hours billed).

[17] We acknowledge that we usually limit our review to the issues raised by an appellant and will not broaden our gaze to examine defects in a challenged ruling that operate to the appellee's detriment in the absence of a cross-appeal. The so called "cross-appeal" rule is not jurisdictional, however, and we have held that it can yield in appropriate circumstances. *See, e.g.*, *District of Columbia v. Chinn*, 839 A.2d 701, 712 n.10 (D.C. 2003) (citing cases); *see also* D.C. Code § 17-306 (2012 Repl.). We conclude such circumstances are present in this case.

[18] Mr. Gardner does not meaningfully challenge the Superior Court's determination that he had failed to explain the relevance of the IRS manuals. He asserts only in a footnote that, had the court read the manuals, it "would have realized [his] purpose for reading [them]." In any event, we agree that the IRS manuals discussing tax deductions are not relevant to his defense of his right to compensation.

objection to his initial fee petition and (2) case file review and research for (but not the actual drafting time the court focused on) Mr. Gardner's amended and supplemental fee petitions. In other words, the 6.6 undiscussed hours were integrally related to the 10.1 disallowed hours Mr. Gardner spent on drafting his supplemental and amended petitions. And based on the record before us, all of these hours were equally suspect.

Specifically, we question the relevance and thus the reasonableness of these 16.7 hours of work. It is far from clear how any of it related to concerns raised about Mr. Gardner's more than $2,000 of travel time to see L.B., about where he actually did his probate work, or about whether he had been truthful in his statements to the court. Instead, much of Mr. Gardner's eight-page response to C.B.'s objection to the travel time billed in his initial fee petition was devoted to unrelated matters: the procedural history of the case, attacks on C.B., and a discussion of work he had not billed for. He devoted less than a page to his explanation for his use of a beyond-the-beltway dummy address as his point of origin for travel. Moreover, the explanation he gave—safety concerns about disclosing his home office address—did not address why he had not *told the court* the Mitchellville, MD address was not his real office address, or why he had not billed for travel from the downtown D.C. address in his signature block (an address that was much closer to L.B.'s Dupont

Circle residence). Similarly, the amended petition Mr. Gardner subsequently filed after the Superior Court denied his initial fee petition was largely nonresponsive to the concerns the court clearly expressed about whether he was entitled to compensation for roundtrip travel time from an undisclosed, outside-the-beltway dummy address[19]—the court stated that it would "not [be] reasonable" for him to bill from an address that was not his and directed him to explain why he had not billed from his signature-block D.C. address. Instead, Mr. Gardner's amended fee petition diverted attention to discussing the work for his other business enterprises, where he conducted that work, and whether he complied with tax regulations.[20] The work he did to review materials (such as fee petitions from other court-appointed fiduciaries) and create exhibits (like eight photographs of his home office) for his amended petition was equally misdirected.

---

[19] Although Mr. Gardner's assertion in his amended petition that some unspecified authority existed for not publicly disclosing his home office address was responsive to the concerns raised about the travel time he had billed, it is wholly unpersuasive. We reject the proposition that Mr. Gardner can withhold his true address *from the court*. And Mr. Gardner's assertion that the court had such notice by virtue of the fact that court personnel had previously called him using his 301 area code is absurd.

[20] The court directed Mr. Gardner to provide a "specific and supported" explanation regarding his "various offices"; but clearly the court was interested in the questions it highlighted related to Mr. Gardner's billing L.B. for travel time. The court was not asking Mr. Gardner to describe in detail his other business enterprises unrelated to his probate work.

In assessing the reasonableness of fees that a court-appointed fiduciary requests to defend their right to compensation, a court should consider whether the defense that was mounted was actually responsive to the objections made to the requested compensation, *see supra* 14–15. The Superior Court rightly questioned the time Mr. Gardner billed to review utterly irrelevant IRS manuals about deductions for home offices and work travel. It should also have questioned the relevance of all the other work Mr. Gardner did to defend his right to compensation.

More fundamentally, the Superior Court should have taken into account Mr. Gardner's responsibility for generating the additional litigation about his right to compensation. Mr. Gardner failed to give the court complete and accurate information. He misrepresented in his billing statement that he made roundtrip visits to L.B. from his "MD Office located at 12138 Central Ave, Mitchelville, MD." Because C.B. objected to the use of an address that was not Mr. Gardner's office but a UPS store, he had to file a response. And because his response was largely nonresponsive and raised more questions for the court, he had to file an amended petition. And, of course, had he not had to file a response and an amended petition, he never would have had to file a supplemental petition to seek compensation for work done on these filings. In other words, the work Mr. Gardner did to defend his right to compensation appears to have been wholly self-inflicted.

Court-appointed fiduciaries do important work for the court: they protect the interests of individuals who are incapacitated in some way, that is, their "ability to receive and evaluate information effectively or to communicate decisions is impaired to such an extent that he or she lacks the capacity to manage all or some of his or her financial resources or to meet all or some essential requirements for his or her physical health, safety, habilitation, or therapeutic needs without court-ordered assistance or the appointment of a guardian or conservator." *See* D.C. Code § 21-2011(11) (2021 Supp.). As this court has previously recognized, court-appointed fiduciaries should be reasonably compensated for their work, including their work to obtain fees. *See In re Orshansky*, 952 A.2d at 211. But to ensure that excessive payment is not being sought from the incapacitated individual's (or public) funds, trial courts have an important oversight role to play, and fiduciaries have a concomitant obligation to give trial courts adequate information to fulfill their oversight role. Where a fiduciary fails in the first instance to give a trial court complete or accurate information in their fee petition and creates more work for himself and the court, he cannot reasonably expect to be paid in full for this self-generated work.[21] Accordingly, we hold that the fact that a fiduciary creates work

---

[21] Compensating attorneys for extra work necessitated by their failure to provide complete and accurate information in their fee petitions would not encourage the type of individuals we want to serve in that capacity—individuals who

for themselves in connection to obtaining compensation is a basis to deny or discount an award of fees sought for that work.

With these principles in mind, we direct the Superior Court to reexamine Mr. Gardner's supplemental fee petition.

### III.  Conclusion

For the reasons stated above, we remand the case for further proceedings consistent with this opinion.

*So ordered.*

---

take seriously their obligations both to be candid with the court and to act in the best interest of the people they are appointed to assist.